Good morning. May it please the court, my name is Steve Blyzik and I represent the employer Dyckman's appeal involves both procedural and substantive issues. This case, after it was tried before the arbitrator and went up to the commission on review, it went to the circuit court. The circuit court entered an order reversing the commission's affirmation of the arbitrator denying benefits. And I tried to bring this matter up before the court. After that order came down and I was told that I could not do that, that it was an interlocutory appeal and I needed to go back to the commission. The case went back to the commission. The commission followed the mandate of the circuit court and awarded benefits under the act. And both parties appealed the commission's decision, went back to the circuit court, and now we're back here. The first time that this matter was in the circuit court, Shea filed a motion for substitution of judges pursuant to section 2-100182 of the Code of Civil Procedure. The motion was granted over the objection of Dyckman. Dyckman asserts that the circuit court's granting of the motion for substitution of judges was an error as a matter of law. By its language, section 2-100182 applies only to civil actions. This matter is not a civil action. This matter arises out of the Workers' Compensation Act, specifically section 19F1, and as such is an administrative proceeding. Black's Law Dictionary defines a civil action as one brought to enforce, redress, or protect a private right. This matter does not address a private right. It is a statutorily prescribed appeal of a state commission's decision. Case law holds that the role of the circuit court involving workers' compensation benefits is appellate only and it has no original jurisdiction over matters determining benefits under the Workers' Compensation Act. Counsel, case law from this court indicates, though, that where the act of commission rules do not regulate a topic, then the civil provisions of the code apply to workers' compensation actions. So, are there any provisions in the act or the commission rules that relate to substitution of judges? Not that I'm aware of. I don't believe so. So, why wouldn't the Code of Civil Procedure, then, that has a rule specific to this particular issue, apply? Because I think by the language of this particular section of the Code of Civil Procedure, it says it applies to civil actions. This is not a civil action. So, if you define a workers' compensation appeal as not falling under the definition of a civil action, then it doesn't apply based on the language of the section of the act. Well, that's a logical, you know, compelling argument, except there's a whole host of cases that say, quote, unquote, however, where the act or commission rules do not regulate a topic, civil provisions have been applied to workers' compensation actions. I mean, there is authority that says it is. There's not? This is a statutory administrative proceeding, which is different than a civil action. As a criminal, obviously, it's different than civil. This is different than civil as well. So, I don't think you can apply, even though there is authority, as you point out, that says where issues are not covered by the Workers' Compensation Act that the Code of Civil Procedure can fill in. When the Code of Civil Procedure actually precludes this, precludes itself from applying to a Workers' Compensation Act, I don't think you can apply it. Well, I understand the logic of the argument, but perhaps we should turn to a more compelling, more critical issue in the case. The overarching issue to me is whether or not the arbitrator, and then following on, applied an incorrect legal standard when denying the claimant benefits. Right. And that's... What do you have to say about that? Right. a final opinion by this Court. When the arbitration decision was entered, the CTA case had not yet been decided, and the arbitrator denied benefits based on General Motors' auto parts. The Commission, in affirming the arbitration decision, the language that was used says it affirms and adopts the decision of the arbitrator that, in that, Che failed to prove an accidental injury. It didn't say it adopted the rationale of the arbitrator. The boilerplate language that it uses when it essentially rubber stamps an arbitration decision is that it affirms and adopts the decision. It doesn't say anything about the rationale. Well, didn't the arbitrator specifically determine that, pursuant to General Motors, the claimant had to prove an immediate apparent psychic injury to establish entitlement to benefits? Isn't that what the arbitrator said? That's what the arbitrator said. And is that correct? I hate to put you in a spot. I think the decision is correct. I think the basis that he used was correct at the time when the CTA case came down. Is it correct today? The decision is still correct based on the facts, but the rationale is not correct. You're trying to parse the decision from the rationale, but the commission, and you didn't read all of it. It says affirms and adopts the decision of the arbitrator, which is attached here to and made a part hereof. Decision is capitalized, capital D. You go to the decision of the arbitrator and it incorporates all of the rationale that we've been talking about, which is incorrect. So the commission adopted that entire document that's entitled decision, not lowercase D, capital D. And it's that erroneous legal analysis that you've got to take on here because you can't parse out just this lowercase D decision from how it got there. The commission adopted everything. Although I'll give you points for your creativity in trying to weave between the lines here. Thank you. There was no specific rejection by the commission of the CTA case. In my brief, I point out case law that dictates we must presume that the commission is aware of case law and that the commission follows the law. There is nothing in the record that rebuts these presumptions, particularly where the record is clear that the CTA case was brought up to the commission's attention and argued before that body. So I think if the case law, I think the record is clear that they knew about the case. And would I have liked them to go in and write their own opinion? The commission, yes. But, you know, that's just the nature of the beast is that the commission tends to take the course of least resistance, in my experience. And if they can live with an arbitrator's decision, the actual finding of the arbitration decision, that they will affirm it and adopt it and not take its... So he exalts form over substance? The claimant has denied benefits on the theory that, well, yeah, you can believe the commission knew about it. You can assume they did, even though they said nothing about it and they adopted the arbitrator's decision. And last I can bear without any additional comment, it's going to be decided in our interpretation, yeah, hey, you know, everybody knows they knew about it, so therefore they must have considered it. Isn't that a little bit of a slender read here, so to speak? I have to put you on the spot, but I have to ask. Well, I don't think, I mean, there is precedence, there's authority that says that you can't really, when it's unclear whether or not, when the evidence shows that they knew about the case and they don't address the case. How do you know they knew about it? Based on the pleading that Shea filed prior to the commission oral argument to take judicial notice of the CTA case. And so now they considered it? Well, they were aware of it. It was brought to them in a written pleading. I argued it. Both parties argued the case before, why it didn't apply or why it did apply, depending on who argued it. Unfortunately, we don't have the transcript of that oral argument, but it was brought to their attention. So I think this court has to follow the prior authority that you must assume that they were aware of it, they considered it, and still found that, based on the record, that despite the prong of seeking immediate attention is no longer there, they still found that facts supported the arbitrator's finding that no benefit, there was no accidental injury. And again, if this was an Olympic event, we'd all be holding up cards that give you a 9.9 for creativity. All right. I will then move to my argument that even if this is a de novo standard, that Judge Glenn should have affirmed the commission's decision. In using the de novo standard, the circuit court relied on the opinion of Dyckman's examining physician, Dr. Bassett, who was of the opinion that Shea had post-traumatic stress as a result of the work incident on 10-2-2010. However, before you get to causal connection, you must first have a compensable accident. The CTA case holds that, I think all cases still hold that, in a mental-to-mental claim, you must have a severe emotional shock that caused a psychological injury. What transpired on October 2nd, 2010, was admittedly upsetting to Mr. Shea, but it was not a severe emotional shock for Shea based on what transpired afterwards. According to Mr. Dyckman, the principal of the employer, immediately after the incident, Mr. Shea appeared upset, but Shea was not shaking, not crying, or not exhibiting any outward signs of physical injury. The record is clear that Shea went back to driving a truck within a week after the incident. On October 7th and October 8th, 2010, Shea made the same run, driving through the same area where the incident occurred, albeit with some alleged difficulty, but it was done. The record also shows that after Shea was precluded from the policies of FedEx, whom Dyckman contracted with, Shea actively looked for other truck driving jobs with other companies. So, but for FedEx's policy that said we can't have a driver who was involved in an accident continue driving for a contractor for us until that accident has been fully investigated and decided, he would have continued to drive. I mean, there's no other evidence that says otherwise in this case. The record also shows that Shea did not seek any treatment because of the incident until April 2011, or six months after the incident. Moreover, there are indications in the record that Shea may not have sought treatment until after meeting with his attorney in conjunction with the lawsuit against one of the drivers in the 10-2-2010 incident. In the CTA court, in the CTA case, this court held that while not dispositive as a matter of law, evidence that a claimant delayed seeking treatment for an alleged psychological injury for an extended period of time following a work incident may still be relevant and may undermine the inference that the claimant suffered a psychological injury. So I think in this case, if you look at the manifest weight of the evidence, there is definitely an undermining of the inference that what Dr. Bassett diagnosed was actually caused by the work accident, that an actual work accident actually existed. Therefore, even under a de novo standard, Shea failed to prove a psychological injury as a result of what transpired on 10-2-2010. You said even applying the rationale of Chicago Transit? Is that your argument? Yes. Specifically the language that says, while not dispositive as a matter of law, the evidence that a claimant delays treatment for an alleged psychological injury still is relevant and may undermine it. So I think if you take a look at the whole picture, the fact that he went back to driving, the fact that he did go back to driving, the fact that, but for FedEx's policies, there is no evidence he would not be continuing driving a truck, that he looked for other truck driving jobs after he was no longer able to drive for the employer, and the delay in treatment. I think you put that all together and the manifest and the facts even under de novo of review require a finding in favor of the employer. An additional alternative argument that I have is that the circuit court should have remanded the matter back to the commission for confirmation whether the commission considered the CTA case in making its decision. The circuit court said it was quite apparent that the commission did not consider the CTA case. And again... I thought the circuit court sort of substituted its own judgment. It was out of the commission, didn't it? It made findings. It did. Did they do that? Is that appropriate? No. The circuit court specifically said on a record that, Judge Klein said, if I use the manifest way of the evidence, I would have to affirm what the commission did. So, and if I just want to, before I run out of time, I just want to note the Pope case, where the Supreme Court held that it was appropriate for cases to be remanded back to the commission if there is some doubt on the face of the document as to whether or not the commission's decision actually reflects the commission's decision. And in that Pope case, there was a form that they used, and there was an alleged wrong check on the form. And in this case, you know, they use a boilerplate language. And, you know, whether or not they're affirming the actual decision with a small d or a capital D is in doubt. And I think, at the very least, it should be remanded back to the commission. Thank you. Thank you, Counsel. Is that time to reply? Counsel, you may respond. Thank you. To please the court, Fred Johnson for Mr. Shea. There's no question in this record the commission used a wrong legal standard. It said so. The commission adopted the decision of the arbitrator. And this court in Chicago Transit made clear that the portion of the General Motors case that there's a two-pronged test, as at least in part been overruled, that there does not need to be a contemporaneous psychiatric manifestation at the time. Your opponent sort of testedly acknowledges that. But what about his creative argument? I recognize Chicago Transit has modified General Motors, but he's making these arguments frequently made when we say the legislature in not overruling or attempting to deal with a, you know, appellate court or Supreme Court decision is testedly aware of it and chooses not to. What about his argument that the commission obviously was aware of and considered Chicago Transit? What do you make of that? Well, I don't make much of it for this reason. When that case was pending before the commission, I took it upon myself to file a motion to bring to the commission's attention the Chicago Transit case. He opposed it in a motion saying it's a slip opinion. I can't force a panel to make a decision. Now, one of two things happened. Either we assume they considered something they refused to expressly rule upon, and why they didn't rule is beyond me, but I have my own thoughts about that and how I feel. But that's irrelevant to this proceeding. One of two things. If they did consider it, they considered it wrong because they affirmed the decision of the arbitrator for the reasons cited. Number two, if they didn't consider it and they just adopted the arbitrator's decision, that as a matter of law is wrong. I think the only reasonable inference that can be drawn is that commission refused deliberately to make a ruling on a pending motion for whatever reason. Perhaps they agreed with counsel that that case was still pending, a slip decision, and opted not to consider it. My argument is just as availing on that as his would be. But either way, when the commission made its decision, in total it adopted the arbitrator's position that there's a two-prong test, which I think we all realize as a matter of law was wrong based upon Chicago Transit. That's the best answer I can give. If I have to distill this case down to a nutshell, I think it comes down to this. Assuming a wrong legal standard was relied upon, the case is remanded to the commission. Should it be remanded to start all over again and reconsider all the evidence in light of Chicago Transit on the merits, or should it be remanded on the issue of whether or not a wage differential should be awarded? Based on this record, if it's a manifest, assuming we're going to remand it from the circuit court to the commission to make a ruling, based on this record on a manifest weight of the evidence standard, a denial of compensation, in my humble opinion, cannot stand. And I say it for this reason. The test of manifest weight is whether or not the opposite result is clearly apparent. In this particular case, we have unrebutted expert testimony from an expert whose credentials cannot be assailed, chosen by my opponent. Four out of five IMEs that he does are for the respondent. There's no argument that he was fair in this case. They don't claim he was unfair. There is no argument his credentials are unassailable. Board-certified, fellowship-trained, professor of psychiatry, published in peer-reviewed journals. He administered the MMPI. He administered the Millon Multiaxial Inventory. These are peer-reviewed, reliable tests. Let's say everything you say is true, just to cut to the chase. What are you asking us to ultimately do? What do you want our decision in this case to be? Cutting to the chase, what I'm asking is that this case be remanded to the commission for the entry of a wage differential award based on the evidence as a matter of law. How can we do that when there's been no factual finding made by the commission? Put aside the circuit court's determination of a factual issue, the commission did not make a determination as to whether or not the claimant suffered a sudden severe emotional shock which caused a psychological injury. Is that a vacuum here? Well, I think as a matter of law, that determination should be made that the petitioner established as a matter of law the requirements under Pathfinder for this to be a compensable case. How do we do that? I mean, that's compounded the problem. Not only did the circuit court not have the ability to make a factual finding, the appellate court certainly does not have that ability. Well, the case can be remanded by the appellate court back to the commission to enter that finding based on the undisputed facts in the record on the testimony of Dr. Bassett. Dr. Bassett established this man suffers from post-traumatic stress disorder attributable to this very accident. The mere fact he didn't immediately manifest a symptom of it is no longer relevant. It's not required. It can be based upon this court's decision in Chicago Transit. That prong is no longer there. But if it's established that he has post-traumatic stress disorder, if it's established that it's related to the accident, and it's established that it's permanent based upon the unrebutted psychiatric testimony, there is no purpose to remand for any other reason other than to order the commission to enter an order finding the case compensable and to make an award, which I am asking to be a wage differential award, based on the testimony that they advance. And I say that on this record because, in my humble opinion, it is unreasonable to allow a trier of fact to take a delay of a number of months that we have in this case and say that in and of itself is sufficient for us as a trier of fact to disregard all of the unrebutted, reliable psychiatric testimony. It's similar, in my opinion, to Boykin. Simply because evidence is unrebutted doesn't mean that the trier of fact has to accept it. That's true. That's absolutely true. So how can a circuit court judge make that determination? How can an appellate court make that determination? When that's reserved for the finder of fact, the finder of fact that's allowed to draw inferences, that's allowed to take unrebutted evidence and find to the contrary. If there is a rational basis for doing so, that is true. But in one of my briefs, I forget whether it was the reply or which brief, there's been so many, I directed this court's attention to the Boykin decision of the Illinois Supreme Court. And by analogy, the Illinois Supreme Court said in Boykin, where it's the same body part that's at issue, if you have a car accident and a woman hurts his back but had a previous back injury, if the defendant wants to refute the effects of the injury at hand, they have to bring forward expert testimony. That's beyond the kin, in the words of the Boykin decision, of the average juror or trier of fact. That principle holds true with even greater force and effect in this case when we're dealing with psychiatric injuries, which, unlike physical injuries, are not readily apparent. When we're dealing with psychiatric injuries such as post-traumatic stress disorder, that is beyond the kin of the average trier of fact, juror or commissioner, to draw those inferences. And true enough, if there is a substantial delay in a vacuum, that can be a factor. But taken in the context of this case, where the only psychiatric evidence we have is from an expert, chosen by the defendant, unassailed credentials, unassailed testing, reliable testing, peer-reviewed, built-in validity scales, and this expert stood fast, this man has post-traumatic stress, it's related to the accident, it's permanent, he can no longer drive a big rig. Moreover, based on the finding of this expert, as a matter of law, my client is precluded from driving a big rig under the Code of Federal Regulations 49 CFR 391. If he suffers a psychiatric injury that, in the words of the statute, he cannot have a mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his ability to drive a commercial motor vehicle. If my client went out to drive a motor vehicle now and get a CDL, he would be compelled to disclose the findings of Dr. Bassett that I have been diagnosed with post-traumatic stress disorder and there's been a finding by that diagnosis, I can't drive big rigs. As a matter of law, he can't drive these rigs anymore. He's proved prima facie that he is entitled to a wage differential since he can't return to that usual and customary employment. You know, I think we understand your argument, but whether or not we will accept your invitation to do what the Commission should have done and didn't do, we'll have to wait for the discussion about that. Right, and I think this is what it comes down to as a matter of law. And if it is remanded, Commission, go ahead and consider all the evidence again. I invite the panel to consider this. Would we be back here eventually on a manifest way to the evidence standard? And that's what's going to happen. And if the Commission is recalcitrant and comes back and says, we're going to now substitute our opinion for that of the undisputed testimony of their IME and find that all of his findings are wrong, he either doesn't have post-traumatic, it's related to something else, it's going to be back here on a manifest way. And I'm going to be asking this Commission to reverse. The law does not require a party to engage in a feudal act, that is to say, to remand for the purpose of going through the machinations, if the end result for the purpose of judicial economy is going to be the same. It just takes away my breath. What's happened here? And on the issue of the wage differential, I've already made my point about the Code of Federal Regulations taking them out. Is their IME put us in that position? We asked for vocational rehabilitation. We were denied. He did a job search as best he could. He described everywhere he went. The Commission says, well, maybe he could go back to doing work with helicopters that he did in the military more than a decade ago. He's 62 years old. Maybe he could be a mechanic. He worked on helicopters in the military back in Desert Storm or earlier. This man, according to Dr. Bassett's report, tried to find work with helicopters after he got out of the military long ago and found it too competitive. He couldn't get a job back then. Is it reasonable to think he's going to get a job now that he's 62 years old and has post-traumatic stress disorder, no indication he even has a pilot's license? I could go on, but I think I've made my point. Thank you. Thank you, counsel. Thank you for your argument. Counsel, you may reply. Thank you. It should be noted that Dr. Bassett is an independent medical evaluator. That being said, the ultimate fact finder in a worker's compensation case is the commission, and that even includes medical facts. But we don't even get to Dr. Bassett's opinion until we find if there's a work accident. And in this case, the facts show that there is no work accident. You don't get to Dr. Bassett's causal connection opinion. You don't get to Dr. Bassett, what he can and cannot do. You don't get to Dr. Bassett because there's no work accident in this case. There's no severe emotional shock. Was it upsetting? Yes. Any human being would be upset seeing what Mr. Shea saw that night. But was it a severe emotional shock, which is required for a finding of a work accident? Well, now are you arguing facts to us? Are you wanting us to be fact finders? I mean, it sounds like you're now arguing a factual issue, and I think it's pretty clear that we can't make findings of fact here. This may be an argument best reserved for the commission. Well, I mean, the arbitrator found facts. Now, granted, under the wrong legal standard. But if you take the findings of the arbitrators, the factual findings of the arbitrator, and even if you apply it to CTA, when you take away the second prong that CTA took away, there is enough facts. I mean, the two of you are arguing the same thing, without realizing it, perhaps. It's ironic. And that very simply is correct. You want us to make the findings the commission didn't enroll in your favor. Your opponent, in essence, wants us to do the same thing. Even though he didn't make the findings, he says we can sort of ignore that because the evidence is undisputed. So the two of you actually agree on one thing. We should rule in the absence of commission findings, which I'm sort of troubled by that, quite frankly. Well, the arbitrator made a factual finding. They made factual findings. The commission adopted those findings in its decision. Now, whether or not it adopted the rationale, whether it was capital D including everything, or small d, that remains to be seen. But there was a factual finding, and if you apply the factual findings of the arbitrator to the correct standard, which I think you can do. We do that? Yeah. You can dictate. I thought we reviewed decisions. I didn't know we made findings. Well, you can apply the appropriate standard that if the commission applies the improper standard, you say based on the proper standard. Oh, we do. The facts dictate that there's no work accident. Okay. The commission made a finding that there was no sudden severe emotional shock, which caused a psychological injury. No, it did not. Well, in affirming the arbitrator's finding, that factual finding, it did. But by implication, again, we're back on that. Right. I just want to touch on that Mr. Shea here failed to treat. When on cross-examination, I don't know if it was recross or what, but Dr. Bassett made it clear that he could, there was treatment, there was medications, there was therapy that he could use to possibly get back to driving a truck, and there was no evidence that Mr. Shea took him up on that treatment. So the fact that he's not able to drive a truck now under federal standards is because he didn't do what he could have done under treatment possibilities. And the finding of Mr. Dolan, the vocational expert for Mr. Shea, he's basically saying that Mr. Shea is only able to earn $9. Mr. Shea has college education. He has vast military experience. He's got life experiences. And for Mr. Dolan to compare Mr. Shea with a high school dropout is just not credible. And there's no facts to support a wage differential award in this case either. Thank you. Okay, counsel. Counsel, both, thank you for your arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue.